Filed 7/13/26  P. v. King CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KAMAL LEON KING,<br><br>        Defendant and Appellant. | A171968<br><br><br>(Alameda County<br>Super. Ct. No. 23CR008025) |

Kamal Leon King pled no contest to the unlawful driving or taking of a vehicle (Pen. Code, § 10851, subd. (a); all unlabeled statutory references are to this code).  The trial court sentenced King to two years of probation, with conditions that he "[p]articipate in any program of counseling, education, testing, or treatment prescribed by the probation department" and "[c]omplete residential drug treatment as recommended by Center Point."  King asserts these probation conditions are unconstitutionally vague and overbroad, and violate the separation of powers doctrine.  We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the morning of August 14, 2023, King was seen driving a pickup truck with a visibly damaged door lock and a license plate that did not belong to the truck.  The following morning, King was seen towing a dump trailer with the same truck.  Both vehicles had been reported stolen.  Investigators

1

detained King and found multiple screwdrivers and vice grips in his possession. King also appeared to be under the influence and told investigators he had just finished using fentanyl.

King was charged with one count of unlawful driving or taking of a vehicle (§ 10851, subd. (a)) and two counts of receiving a stolen vehicle (§ 496d, subd. (a)). He pled no contest to the count of unlawful driving or taking of a vehicle and admitted the aggravating factor of a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)).

On the matter of sentencing, the probation department recommended that probation be denied. But in the event probation were granted, the department requested a number of conditions, including the conditions that King "[s]ubmit to such education, counseling, treatments, or tests as directed by the Probation Officer" ("Condition 11") and that he "[p]articipate in an approved residential drug treatment program for at least three months" ("Condition 14").

At the sentencing hearing, and as relevant here, the trial court placed King on formal felony probation for two years under various conditions. Among other things, the court stated: "There will be all the standard conditions including a four-way search clause. . . . [¶] He's to report to his PO within five days of his release. He's not to leave the State of California without the permission of the probation officer. Participate in any program of counseling, education, testing, or treatment prescribed by the probation department."

Defense counsel then objected to the residential drug treatment requirement proposed in Condition 14, asserting it seemed "open ended" to the point of vagueness. Counsel expressed concerns that the length of the program (specified only as a three-month minimum) could exceed the

2

duration of probation and asked that a "definitive time period" be imposed instead. The probation officer responded that King was being asked to complete a residential program of a length recommended by Center Point,[1] that King would likely be in treatment within the first 60 to 90 days of his release, and that individuals generally did not spend more than six months to a year in treatment. Defense counsel did not flat out object to the proposed completion of "a residential program recommended by Center Point" but pressed his concern that the condition as phrased allowed for the possibility that 13 months into probation, King would receive a recommendation that he complete a one-year program, which would then exceed the length of probation and cause him to be in violation of its terms. In response, the probation officer reiterated that drug treatment programs are generally "six months tops."

The trial court stated it could not imagine a probationer being deemed to have not successfully completed probation in the scenario described by defense counsel, and both the court and the probation officer agreed that King would be able to raise an objection if such a situation arose. No further dialogue occurred on this issue. Consistent with the discussions at the hearing, the court wrote in the "Further Conditions" section of a standard probation form (the "Probation Order") that King was to "[c]omplete residential drug treatment as recommended by Center Point." In the "Drug Conditions" section of the judicial form, the court checked only the box

---

[1] King's opening brief refers to Center Point as a "private entity" and indicates the "organization and nature of Center Point and its private treatment services" are not specified in the record on appeal. But King does not counter the People's response explaining that Center Point is a substance abuse program that contracts with Alameda County. We note that at the sentencing hearing, neither the parties nor the trial court expressed any unfamiliarity with Center Point or the treatment services it offers.

3

prohibiting King from using, possessing, and trafficking in narcotics or dangerous drugs and from associating with any persons using or in any way trafficking narcotics or dangerous drugs. Though the court left *unchecked* the other box in the "Drug Conditions" section that reflected Condition 11's proposed requirement of education, counseling, treatment, or tests as directed by the probation officer, neither side disputes on appeal that the court orally included the terms of Condition 11 as part of its probation order. (See, e.g., *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346 [where clerk's and reporter's transcripts conflict, "the part of the record that will prevail is the one that should be given greater credence in the circumstances of the case"].)

## DISCUSSION

King asserts the probation conditions ordering him to submit to such education, counseling, treatments, or tests as directed by the probation department (see trial court's oral pronouncement referencing the language used in proposed Condition 11 and in the Probation Order under "Drug Conditions") and to complete residential drug treatment as recommended by Center Point (see proposed Condition 14 and the Probation Order under "Further Conditions") are unconstitutionally vague and overbroad, and constituted an impermissible delegation of judicial authority.

### A.   *Vagueness and Overbreadth*

King argues his probation conditions were unconstitutionally vague and overbroad because they did not inform him of what was required of him and rendered him "completely at the mercy of the probation department and private entity Center Point." Because the trial court did not order a specific type of counseling, education, or treatment, King contends these conditions could include within their "broad sweep" any number of programs including

4

financial counseling, mental or behavioral counseling, drug or alcohol counseling, family counseling, or empathy training, among others. We are not persuaded.

A constitutional challenge to a probation condition presents a question of law that we review de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) "To survive a vagueness challenge, a probation condition must be precise enough to provide the probationer with notice of what is required or prohibited and allow the court to ascertain whether the probationer has violated its terms." (*People v. Smith* (2022) 79 Cal.App.5th 897, 901–902 (*Smith*).) In evaluating probation conditions, we consider their context and employ common sense, giving terms the meanings that would appear to a reasonable, objective reader. (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129.) We also consider any oral or written comments of the trial court in clarifying the probation condition to determine if a challenged condition is unconstitutionally vague. (*Smith*, at p. 902.)

Here, the probation conditions were certain enough to apprise King of his obligations. True, the trial court began the sentencing hearing with the statement that King would be required to "[p]articipate in any program of counseling, education, testing, or treatment prescribed by the probation department," without further elaboration. But the probation report, the subsequent discussions in court, and the written Probation Order all made reasonably clear the court was not imposing a broad and undefined condition for counseling, education, testing, or treatment. To the contrary, the only condition in the Probation Order that literally mirrored such terms—though the box was inadvertently left unchecked—was a drug-related condition. The record contains no indication that programs separate from drug treatment on topics such as financial counseling, mental or behavioral counseling, family

counseling, or empathy training were being either requested or ordered.  And as the colloquy at the sentencing hearing and text of the Probation Order otherwise confirm, the trial court agreed with the probation department's recommendation to require King's completion of residential drug treatment as recommended by Center Point.

King also challenges the residential drug treatment condition in the Probation Order as lacking in adequate definition and specificity.  In support, King cites the holding in *Smith* that, given the significant liberty interests at stake, it is for a court and not a probation officer to decide whether a probationer must participate in a residential (as opposed to outpatient) treatment program.  In King's view, this principle applies with "even greater force" where the decision-making authority has been delegated to a private entity such as Center Point.  This contention is unavailing.

Importantly, the Probation Order makes clear that the trial court—not Center Point—determined that King must complete residential drug treatment.  Moreover, King fails to present a cogent argument as to why the residential drug treatment condition was insufficiently defined or specific. (See *People v. Benson* (2025) 110 Cal.App.5th 1068, 1078–1079, fn. 2 (*Benson*) [appellant must supply the reviewing court with a cogent argument supported with legal analysis and citation to the record to demonstrate error].)

King additionally claims the challenged conditions are unconstitutionally overbroad.  However, his appellate briefing omits a separate analysis of overbreadth principles, which generally relate to whether a probation condition "closely tailor[s]" limitations on an individual's constitutional rights to the purpose of the condition.  (See *In re Sheena K.*

6

(2007) 40 Cal.4th 875, 888, 890.)  As such, we do not discuss it.  (See *Benson*, *supra*, 110 Cal.App.5th at p. 1079.)

**B.    *Delegation of Judicial Authority***

King asserts the trial court impermissibly delegated judicial authority to the probation department and Center Point, in violation of the separation of powers doctrine, when it gave these entities "unfettered discretion" to compel his completion of "any type" of counseling, education, testing, or treatment for an "ill-defined" duration of time.  We disagree.

The principles governing our analysis are well established.  It is the duty of the trial court to determine the nature of the requirements imposed upon a probationer.  (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1359 .)  This judicial power cannot be delegated to nonjudicial officers under the separation of powers doctrine.  (*Smith*, *supra*, 79 Cal.App.5th at p. 902.)  Courts, however, are permitted to delegate to the probation department the "specification of the many details that invariably are necessary to implement the terms of probation," so long as the order is not "entirely open-ended."  (*In re Victor L.* (2010) 182 Cal.App.4th 902, 919 .)

As previously discussed, the Probation Order did not broadly authorize the probation department to compel King's submission to *any* type of counseling, education, testing, or treatment.  Nor was the order's residential drug treatment condition ill-defined.  Indeed, between the parties' discussions at the sentencing hearing and the terms set forth in the Probation Order, King was apprised that he would be attending a residential drug treatment program and its approximate duration (i.e., approximately six months and not exceeding his term of probation).  As such, the probation conditions here were identical to those in other cases that have survived claims of improper delegation of judicial authority.  (See, e.g., *People v. Penoli*

7

(1996) 46 Cal.App.4th 298, 307–308 [upholding delegation of authority to probation department to unilaterally select a residential drug rehabilitation program where no particular program was identified].)

## DISPOSITION

We remand the matter and order the trial court to correct the written form setting out the conditions of King's probation to conform to the court's oral pronouncement at sentencing as explained above.  The judgment is otherwise affirmed.


_____
Fujisaki, J.


WE CONCUR:


_____
Tucher, P. J.


_____
Rodríguez, J.


*People v. King* (A171968)